**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

```
------------------------------x
                              :
MICHELLE R. GREEN             :    Civil No. 1:17CV01185 (HBF)
                              :
v.                            :
                              :
NANCY A. BERRYHILL, ACTING    :
COMMISSIONER, SOCIAL SECURITY :
ADMINISTRATION                :
                              :
------------------------------x
```

<u>**RULING ON CROSS MOTIONS**</u>

Plaintiff Michelle R. Green brings this action pursuant to
42 U.S.C. §405(g), seeking review of a final decision of the
Commissioner of Social Security which denied her application for
Disability Insurance Benefits ("DIB") under Title II Social
Security, 42 U.S.C. §401 <u>et seq</u>. ("the Act"). Plaintiff has
moved to reverse or remand the case for a rehearing. The
Commissioner has moved to affirm.

For the reasons set forth below, plaintiff's Motion for
Judgment on the Pleadings **[Doc. #15]** is **GRANTED**. Defendant's
Motion for Judgment on the Pleadings **[Doc. #22]** is **DENIED.**

**I. ADMINISTRATIVE PROCEEDINGS**

The procedural history of this case is not disputed.
Plaintiff protectively filed an application for DIB on June 11,
2013, alleging disability as of January 23, 2013.[1] [Certified

---

[1] Plaintiff's date last insured for Title II benefits is March

1

Transcript of the Record, Compiled on February 3, 2018, Doc. #5 (hereinafter "Tr.") 63, 125-26]. Plaintiff alleged disability due to "spinal cord injury cervical, hern[iated] disc cervical with myelopathy, stenosis cervical, headaches, muscle spasms." [Tr. 64]. Her DIB claim was denied on March 7, 2014. [Tr. 22, 69-72]. Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ") on March 23, 2014. [Tr. 84-86].

On March 29, 2016, Administrative Law Judge ("ALJ") Carl E. Stephan held a hearing, at which plaintiff appeared with a paralegal and testified. [Tr. 38-62]. No Vocational Expert testified at the hearing. [Tr. 38]. On June 10, 2016, the ALJ found that plaintiff was not disabled, and denied her claim. [Tr. 19-37]. Plaintiff filed a timely request for review of the hearing decision on July 19, 2016. [Tr. 123-24]. On September 14, 2017, the Appeals Council denied review, thereby rendering ALJ Smith's decision the final decision of the Commissioner. [Tr. 1-6]. The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff, represented by counsel, timely filed this action for review and moves to reverse and/or remand the Commissioner's decision.

---

31, 2019. [Tr. 24].

## II.  STANDARD OF REVIEW

The review of a social security disability determination involves two levels of inquiry. First, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the Court must decide whether the determination is supported by substantial evidence. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence."). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of

the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alteration added) (citation omitted). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citation omitted). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, Civil Action No. 3:13-CV-00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (internal citations omitted).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to

4

determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (citations and internal quotation marks omitted). "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013)(citations omitted).

## III. SSA LEGAL STANDARD

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits.

To be considered disabled under the Act and therefore entitled to benefits, Ms. Green must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); see also 20 C.F.R. §404.1520(c)

(requiring that the impairment "significantly limit[ ] ...
physical or mental ability to do basic work activities" to be
considered "severe").[2]

There is a familiar five-step analysis used to determine if
a person is disabled. <u>See</u> 20 C.F.R. §404.1520(a)(4). In the
Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is
> currently engaged in substantial gainful activity. If he
> is not, the Secretary next considers whether the
> claimant has a "severe impairment" which significantly
> limits his physical or mental ability to do basic work
> activities. If the claimant suffers such an impairment,
> the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed
> in Appendix 1 of the regulations. If the claimant has
> such an impairment, the Secretary will consider him
> disabled without considering vocational factors such as
> age, education, and work experience; the Secretary
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful
> activity.

<u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982) (<u>per</u>
<u>curiam</u>). If and only if the claimant does <u>not</u> have a listed
impairment, the Commissioner engages in the fourth and fifth
steps:

> Assuming the claimant does not have a listed impairment,
> the fourth inquiry is whether, despite the claimant's
> severe impairment, he has the residual functional
> capacity to perform his past work. Finally, if the
> claimant is unable to perform his past work, the
> Secretary then determines whether there is other work

---

[2] DIB and SSI regulations cited herein are virtually identical.
The parallel SSI regulations are found at 20 C.F.R. §416.901 <u>et</u>
<u>seq</u>., corresponding to the last two digits of the DIB cites
(e.g., 20 C.F.R. §404.1520 corresponds with 20 C.F.R. §416.920).

which the claimant could perform. Under the cases
previously discussed, the claimant bears the burden of
proof as to the first four steps, while the Secretary
must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens

of production and persuasion, but if the analysis proceeds to

the fifth step, there is a limited shift in the burden of proof

and the Commissioner is obligated to demonstrate that jobs exist

in the national or local economies that the claimant can perform

given his residual functional capacity." Gonzalez ex rel. Guzman

v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d

Cir. 2010) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003)); Poupore

v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)).

"Residual functional capacity" is what a person is still capable

of doing despite limitations resulting from her physical and

mental impairments. See 20 C.F.R. §§404.1545(a), 416.945(a)(1).

"In assessing disability, factors to be considered are (1)

the objective medical facts; (2) diagnoses or medical opinions

based on such facts; (3) subjective evidence of pain or

disability testified to by the claimant or others; and (4) the

claimant's educational background, age, and work experience."

Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978) (citation

omitted). "[E]ligibility for benefits is to be determined in

light of the fact that the Social Security Act is a remedial

statute to be broadly construed and liberally applied." <u>Id.</u>
(citation and internal quotation marks omitted).

## IV.   THE ALJ'S DECISION

Following the above-described five step evaluation process,
ALJ Stephan concluded that plaintiff was not disabled under the
Social Security Act. [Tr. 19-37]. At step one, the ALJ found
that plaintiff had not engaged in substantial gainful activity
since January 23, 2013, the alleged onset date. [Tr. 24].

At step two, the ALJ found that plaintiff had cervical
sprain and strain; cervical spondylosis; cervical disc
herniation without myelopathy; and lumbar strain, all of which
are severe impairments under the Act and regulations. [Tr. 24-
28]

At step three, the ALJ found that plaintiff's impairments,
either alone or in combination, did not meet or medically equal
the severity of one of the listed impairments in 20 C.F.R. Pt.
404, Subpart P, Appendix 1. [Tr. 28]. The ALJ specifically
considered Listing 1.04 (disorders of the spine). [Tr. 28]. The
ALJ also conducted a psychiatric review technique and found that
plaintiff had a no restriction in activities of daily living or
social functioning, and a mild restriction in concentration,
persistence or pace. [Tr. 26-27]. The ALJ found no episodes of
decompensation. [Tr. 27].

Before moving on to step four, the ALJ found plaintiff had

the RFC "to perform the full range of light work, as defined in 20 C.F.R. 404.1567(b)." [Tr. 28].

At step four, the ALJ found plaintiff was unable to perform any past relevant work. [Tr. 31]. At step five, after considering plaintiff's age, education, work experience and RFC, the ALJ found that jobs existed in significant numbers in the national economy that plaintiff could perform. [Tr. 31-32].

The ALJ concluded that plaintiff had not been under a disability from January 23, 2013, the alleged onset date of disability, through June 10, 2016, the date of the ALJ's decision. [Tr. 32].

## V. DISCUSSION

Plaintiff first argues that the "Commissioner erred in substituting her own 'medical' judgment for that of any physician." [Doc. #15-1 at 21-26]. She contends that "the ALJ erred by rejecting all treating provider opinions, granting 'considerable' weight to the vague opinion of the insurance company consultant Dr. Medved, and then effectively formulating a function-by-function physical RFC without any medial authority." [Doc. #15-1 at 23-26]. She next argues that the ALJ erred at Step Three in failing to consider Ms. Green's lumbar spine injury under Medical Listing 1.04(A) after the second motor vehicle accident. [Doc. #15-1 at 26-32]. Finally,

plaintiff contends that the ALJ erred in ignoring and failing to evaluate or weigh the opinion of treating orthopedic surgeon Dr. Cameron Huckell. [Doc. #15-1 at 32-36].

An ALJ has the responsibility to determine a claimant's RFC based on all the evidence of record. 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1). The RFC is an assessment of "the most [the disability claimant] can still do despite [his or her] limitations." 20 C.F.R. §404.1545(a)(1), 416.945(a)(1). Although "[t]he RFC determination is reserved for the commissioner...an ALJ's RFC assessment is a medical determination that must be based on probative evidence of record.... Accordingly, an ALJ may not substitute his own judgment for competent medical opinion." Walker v. Astrue, No. 08-CV-0828(A)(M), 2010 WL 2629832, at *6 (W.D.N.Y. June 11, 2010)(quoting Lewis v. Comm'r of Soc. Sec., No. 6:00CV1225(GLS), 2005 WL 1899, at *3 (N.D.N.Y. Aug. 2, 2005)(internal citations omitted)). Nevertheless, plaintiff has the burden to demonstrate functional limitations that would preclude any substantial gainful activity. See 20 C.F.R. §§§404.1545(a)(3), 416.945(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity."); 42 U.S.C. §423(d)(5)(A)("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence

of the existence thereof as the Commissioner of Social Security may require.").

Pursuant to 20 C.F.R. §§404.1527(c)(2) and 416.927(c)(2), a treating source's opinion will usually be given more weight than a non-treating source. If it is determined that a treating source's opinion on the nature and severity of a plaintiff's impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," the opinion is given controlling weight. 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2). If the opinion, however, is not "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques, then the opinion cannot be entitled to controlling weight. Id. If the treating source's opinion is not given controlling weight, the ALJ considers the following factors in weighing the opinion: length of treatment relationship, frequency of examination, nature and extent of the treatment relationship, relevant evidence used to support the opinion, consistency of the opinion with the entire record, and the expertise and specialized knowledge of the source. See 20 C.F.R. §§404.1527(c)(2)-(6), 416.927(c)(2)-(6); Social Security Ruling ("SSR") 96-2P, 1996 WL 374188, at *2 (S.S.A. July 2, 1996). "While an ALJ may discount a treating physician's opinion if it does not meet this standard, the ALJ must 'comprehensively set

forth [his] reasons for the weight assigned to a treating physician's opinion.'" Pilarski v. Comm'r of Soc. Sec., No. 13-CV-6385-FPG, 2014 WL 4923994, at *2 (W.D.N.Y. Sept. 30, 2014)(quoting Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004).

Here, the ALJ found that plaintiff had the RFC to "perform the full range of light work, as defined in 20 C.F.R. §404.1567." [Tr. 28]. The regulations dictate the physical exertion requirements of light work:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §404.1567.

The administrative record in this case contains numerous detailed treatment records, and medical opinions from treating and other examining sources that relate the medical evidence to what plaintiff can and cannot do functionally. Plaintiff accurately points out that there are numerous disability assessments, supported by functional limitation, by her treating

providers in the record and there is no dispute that plaintiff
was disabled from returning to her work as a CNA. [Tr. 31]. It
is also undisputed that plaintiff did not work after the first
motor vehicle accident on January 23, 2013, that the injuries
sustained were due to the accident, and that conservative
treatment did not relieve her symptoms. After a second motor
vehicle accident on February 20, 2014, it is also undisputed
that plaintiff sustained injuries to her lumbar spine and this
accident was an aggravating/activating event to a pre-existing
cervical condition.

Notably, the ALJ did not assess the opinion of treating
orthopedic surgeon Dr. Cameron Huckell in making his RFC
determination, as conceded by defendant. [Doc. #22-1 at 19].
Defendant argues that "[a]lthough the ALJ did not explicitly
mention [the October 2014 disability statement], the ALJ's
decision was consistent with Dr. Huckell's statement" and the
RFC assessment "was based on all the relevant medical evidence
and other evidence of record, including Plaintiff's own
statements." [Doc. #22-1 at 19-20 (emphasis added)]. The Court
disagrees. The failure to evaluate an opinion by a treating
physician, however brief, requires remand. Schramm v. Colvin,
No. 13-CV-806S, 2014 WL 4627222, at *3 (W.D.N.Y. Sept. 15,
2014)("[T]he Appeals Council, like the ALJ, is required to
provide "good reasons" for rejecting treating-source opinions—

13

even laconic opinions."); 20 C.F.R. § 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.")(emphasis added). The ALJ was free to reject or discount Dr. Huckell's opinion, but in making that decision, the ALJ had to address the opinion and offer his rationale for doing so. Schramm, 2014 WL 4627222, at *4 ("On remand, the Commissioner must offer 'good reasons' for rejecting Dr. Ambis' opinion, or request more information from Dr. Ambis.").

During the relevant period under review, there is no opinion of record by a treating physician or other medical provider that plaintiff was able to work and/or was ready to return to work. Rather, the ALJ's decision in large part indicates that he impermissibly assessed plaintiff's RFC on the basis of bare medical findings, and substituted his own judgment for competent medical opinion.

This is not a case where plaintiff suffers relatively little physical impairment, such that the ALJ may render a common sense judgment about plaintiff's functional capacity. The ALJ acknowledged as much by designating plaintiff's cervical sprain and strain; cervical spondylosis; cervical disc herniation without myelopathy; and lumbar strain "severe." [Tr. 24-28].

Moreover, throughout the treating relationship with Dr.

14

Huckell, the doctor opined that plaintiff was temporarily totally disabled as a result of the motor vehicle accident in January 2013 and was unable to return to her job. [Tr. 244 (8/8/13), Tr. 234 (10/9/13), Tr. 228 (12/5/13), Tr. 222 (12/17/13). By March 2014, and after the second motor vehicle accident in February 2014, Dr. Huckell opined that he considered plaintiff to have a permanent partial disability. [Tr. 388 (3/21/14), Tr. 401 (6/18/14), Tr. 414 (8/7/14), Tr. 450 (10/4/14)].

Dr. Huckell's treatment notes include detailed notations of physical examination of plaintiff's mussculoskeletal system (including gait, physical inspection, range of motion, strength, straight leg raises), neurologic system (including deep tendon reflexes, sensation and pathologic reflexes), and her psychiatric status. [Tr. 218, 233, 243, 384, 394-95, 405-06, 442-43]. Beginning in December 2013, Dr. Huckell noted that conservative care, including chiropractic, massage and physical therapy, did not improve her symptoms. [Tr. 217, 226]. On examination, Dr. Huckell noted that plaintiff's "left grip strength is 25% less than a right grip strength indicating that the spinal cord compression and nerve root compression left side is starting to cause some neurological problems that are objective." [Tr. 217, 226]. At that time, plaintiff provided a consent to surgery. [Tr. 221]. The doctor stated,

Michelle is now developing some early signs of
myelopathy and there is an indication for surgery. I
explained to her that she is a candidate for anterior
cervical discectomy and fusion and allograft bone cage
and plate  C5-7. There is no indication for further
physical therapy since she has had neurological
worsening.

Review of the thoracic spine MRIs dated 4/12/13 shows
pathology consisting of multilevel disc bulging with
mild upper thoracic spondylosis. As there is no
significant central stenosis at any level, there is no
immediate indication for surgery to her thoracic spine
and we are not recommending it at this time.

Because of the worsening neurological condition I
consider [her to] be temporarily totally disabled for
all work. We are planning on proceeding with surgery
relatively soon. Michelle will remain out of work.

[Tr. 222, 228]. In March and June 2014, Dr. Huckell noted

that "[w]e are planning on proceeding with surgery

relatively soon." [Tr. 388, 401], However, despite

providing consent to surgery, Dr. Huckell noted in August

and October 2014, that plaintiff "is not ready to commit

[to] any surgical intervention yet which is reasonable."

[Tr. 404, 441].

After the second MVA in February 2014, Dr. Huckell stated

Causality: It is my opinion that Michelle sustained
significant injuries to her lumbar spine and an
aggravating/activating event to pre-existing
symptomatic cervical spinal condition as a result of
this motor vehicle accident. Michelle settled with her
first MVA case (01/23/13)

Disability: It is my opinion that Michelle is
considered to have a permanent partial disability at
this time as a result of the first motor vehicle
accident dated 1/23/13. A FCE [functional capacity

evaluation] can be done for specific
limitations/restrictions if warranted. She was not
working at the time of her second MVA (02/20/2014).
Therefore, no disability status is needed/warranted at
this time regarding the second MVA.

[Tr. 388-89 (3/21/14), 401 (6/18/14), 414 (8/17/14)].  A

functional capacity evaluation was not performed or, if done, is

not part of the record.

In the last treatment record in October 2014, on physical

examination Dr. Huckell noted paravertebral muscle rigidity.

Cervical range of motion revealed, flexion 45 degrees/0-60

degrees, extension 40 degrees/0-75 degrees, bending to right 15

degrees/0-45 degrees, rotation to right 65 degrees/0-80 degrees,

rotation to left 50 degrees/0-80 degrees. Thoracic range of

motion revealed flexion 40 degrees/0-50 degrees, rotation 15

degrees/10-30 degrees, rotation to left 15 degrees/10-30

degrees. Lumbar range of motion revealed flexion 40 degrees/0-60

degrees, extension 10 degrees/0-25 degrees, bending to right 20

degrees/0-25 degrees, bending to left 20 degrees/0-25 degrees.

The doctor noted functional range of motion of shoulders,

elbows, wrists, hips, knees, and ankles. Strength was 5/5

bilaterally for the upper extremities including intrinsic

muscles of hands. Grip strength was firm bilaterally. However,

in objective grip strength testing, the doctor noted that

plaintiff's right hand achieved a crit of 28 kg of force and her

left hand was 25% less than 22 kg of force, "which is clearly

objective evidence of weakness in a left-handed individual."
[Tr. 443]. Straight leg raises were positive on the left side at
approximately 50 degrees. Deep tendon reflexes 2+ at the
bilateral knees and ankles, 3+ at the bilateral upper
extremities and plaintiff has spreading to other muscle groups
at proximal joints. Sensation was intact to light touch
bilaterally to upper and lower extremities. Finally, pathologic
reflexes showed Hoffman sign were bilaterally positive. [Tr.
443].

On October 7, 2014, Dr. Huckell added, that while "[s]he
was not working at the time of her second MVA (02/23/2014) the
second accident activated/aggravated her pre-existing condition
and continued her loss of work to some extent." [Tr. 450]. The
doctor "recommended against lumbar surgery for her condition
although she might be helped by lumbar epidural steroids."
[Tr. 441; see Tr. 452 (Dr. Huckell referred her to Dr. Waghmarae
for consideration of epidural steroids and possibility of pain
management).

Dr. Huckell provided the following disability opinion on
October 7, 2014,

> Michelle Green is disabled for work at this time and
> will remain so for a period of at least 3 months from
> today in my opinion. She has also been disabled from
> work between January 21, 2013 and February 20, 2014 as
> a result of the first car accident January 21, 2013.
> Her condition was worsened by the second car accident
> dated February 20, 2014 this prolong[s] her period of

inability to work. She formerly worked at a nursing home in Orchard Park as a certified nursing assistant. Both of these car accidents rendered her totally disabled for that type of work.

[Tr. 453].

Instead of addressing Dr. Huckell's opinion, the ALJ ignored it, writing that

David H. Joslyn, a registered physician's assistant in Dr. Huckell's office reported in April 2014 (Exhibit 11F) and September 2014 (Exhibit 13F) that the claimant is totally disabled. The Administrative Law Judge finds little support for his statements, since reports from Dr. Huckell the claimant's treating orthopedist, indicate that the claimant's disability is of a temporary nature (Ex. 2F and 3F).

[Tr. 30]. Plaintiff correctly states that "the ALJ did not address Dr. Huckell's opinion, as he assumed the reports from Pinnacle indicating that Ms. Green is totally disabled came from the physician assistant Mr. Joslyn (Tr. 30) and thus are not governed by 20 C.F.R. §404.1527." [Doc. #15-1 at 34]. As set forth above, Dr. Huckell examined plaintiff, reviewed the diagnostic imaging and co-signed these reports.

The Commissioner argues that since the ALJ found that plaintiff could perform light or sedentary work, that this is consistent with Dr. Huckell's October 7, 2014 opinion precluding her work as a certified nurse assistant. [Doc. #22-1 at 19-20]. However, Dr. Huckell did not specifically state why Ms. Green could not perform her past work. The doctor documented "objective" evidence of weakness to plaintiff's dominant left

19

hand and arm, left upper and lower extremities with neurological
worsening throughout the treatment history. [Tr. 217, 222, 226-
27, 383, 388, 393, 400-01, 404, 406, 441, 443, 450]. However,
the ALJ's RFC determination makes no mention of additional
functional limitations due to plaintiff's dominant left hand/arm
radicular symptoms. Nor did the ALJ include any manipulative or
postural limitations to account for these radicular symptoms to
plaintiff's left dominant hand or other neurological worsening
to her left upper and lower extremities.

"Because the ALJ failed to cite to any medical opinion to
support his RFC findings, the Court is unable to determine if
the ALJ improperly selected separate findings from different
sources, without relying on any specific medical opinion." <u>Hogan</u>
<u>v. Astrue</u>, 491 F. Supp. 2d 347, 354 (W.D.N.Y. 2007).

> Where, as here, the medical findings and reports
> merely diagnose the claimant's impairments without
> relating the diagnoses to specific physical, mental,
> and other work-related capacities, the administrative
> law judge's "determination of residual functional
> capacity without a medical advisor's assessment of
> those capacities is not supported by substantial
> evidence." Given Plaintiff's multiple physical and
> mental impairments, this is not a case where the
> medical evidence shows "relatively little physical
> impairment" such that the ALJ "can render a common
> sense judgment about functional capacity."

<u>Palascak v. Colvin</u>, No. 1:11-CV-0592 MAT, 2014 WL 1920510, at *9
(W.D.N.Y. May 14, 2014): <u>see</u> <u>also</u> <u>House v. Astrue</u>, No. 5:11-CV-
915 GLS, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1,

2013)("[A]lthough the RFC determination is an issue reserved for
the commissioner, an ALJ is not qualified to assess a claimant's
RFC on the basis of bare medical findings and as a result, an
ALJ's determination of RFC without a medical advisor's
assessment is not supported by substantial evidence.")(internal
citation and quotation marks omitted).

Because the ALJ failed to assess Dr. Huckell's opinion and
dismissed the opinions from other treating medical sources there
is no medical opinion regarding Green's functional capacity to
complete the activities for a full range of light work or
sedentary work.  Martin v. Berryhill, No. 16-CV-6184-FPG, 2017
WL 1313837, at *3 (W.D.N.Y. Apr. 10, 2017)("Because the ALJ
rejected Dr. Finkbeiner's opinion, the record lacks any medical
opinion as to Martin's physical ability to engage in work at any
exertional level on a regular and continuous basis in an
ordinary work setting. There is no medical opinion regarding her
capacity to sit, stand, walk, or lift, which are necessary
activities for sedentary work. See 20 C.F.R. §§ 404.1567(a),
416.967(a)."). The ALJ's failure to evaluate the opinion of
treating orthopedic surgeon Dr. Huckell is error requiring
remand.

While the Commissioner is free to decide that the opinions
of acceptable medical sources and other sources are entitled to
no weight or little weight, those decisions should be thoroughly

explained. <u>Sears v. Astrue</u>, Civil Action No. 2:11-CV-138, 2012 WL 1758843, at *3 (D. Vt. May 15, 2012). Indeed, when an ALJ rejects all physician opinion evidence, an evidentiary deficit exists. "[E]ven though the Commissioner is empowered to make the RFC determination, '[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities,' the general rule is that the Commissioner 'may not make the connection himself.'" <u>Martin</u>, 2017 WL 1313837, at *3 (quoting <u>Wilson v. Colvin</u>, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015)).

"In light of the ALJ's affirmative duty to develop the administrative record, an ALJ cannot reject [or ignore] a treating physician's [opinion] without first attempting to fill any clear gaps in the administrative record." <u>Burgess v. Astrue</u>, 537 F.3d 117, 129 (2d Cir. 2008)(quoting <u>Rosa v. Callahan</u>, 168 F.3d 72, 79 (2d Cir. 1999)); <u>see</u> <u>Schaal v. Apfel</u>, 134 F.3d 496, 505 (2d Cir. 1998)("Even if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] <u>sua</u> <u>sponte</u>.")).

> The proceedings before an ALJ are not supposed to be adversarial. Where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history "even when the claimant is represented by counsel or ... by a paralegal." <u>Perez v. Chater</u>, 77 F.3d 41, 47 (2d Cir.1996); <u>see also</u> <u>Pratts v. Chater</u>, 94 F.3d 34, 37

(2d Cir. 1996) ("It is the rule in our circuit that
'the ALJ, unlike a judge in a trial, must herself
affirmatively develop the record' in light of 'the
essentially non-adversarial nature of a benefits
proceeding.' This duty ... exists even when ... the
claimant is represented by counsel." (quoting
Echevarria v. Secretary of Health & Human Servs., 685
F.2d 751, 755 (2d Cir. 1982))).

Richardson v. Barnhart, 443 F. Supp. 2d 411, 423 (W.D.N.Y.
2006).

Because there is no medical source opinion or
functional assessment supporting the ALJ's finding that Ms.
Green can perform the full range of light work, the Court
concludes that the RFC determination is without substantial
support in the record and a remand for further
administrative proceedings is appropriate. See House v.
Astrue, No. 5:11-CV-915 (GLS), 2013 WL 422058, at *4
(N.D.N.Y. Feb. 1, 2013) (citing Suide v. Astrue, 371 F.
App'x 684, 689-90 (7th Cir. 2010) (holding that "the
evidentiary deficit left by the ALJ's rejection" of a
physician's reports, but not the weight afforded to the
reports, required remand.)).

On remand, the ALJ should develop the record as
necessary to obtain opinions as to plaintiff's functional
limitations from treating and/or examining sources, obtain
a consultative physical examination and/or a medical expert
review, obtain a functional capacity evaluation, and obtain

emergency room treatment records from Erie County Medical
Center and/or Kenmore Mercy Hospital for neck or low back
pain [Tr. 61-62 (plaintiff testifying that she has sought
emergency care approximately ten times for pain related
issues), Tr. 510-11 (August 9, 2015, emergency room
treatment records noting plaintiff presented with
"worsening neck pain that is radiating down into her left
arm." On examination noting "symptoms suggestive of a C6 C7
radiculopathy likely secondary to muscle spasm after sprain
of the neck.")].

The Commissioner on remand should thoroughly explain
his findings in accordance with the regulations.[3] See
Martin, 2017 WL 1313837, at *4 ("There were many avenues
available to the ALJ to fill the gap in the
record....")(citing Covey v. Colvin, 204 F. Supp. 3d 497,
507 (W.D.N.Y. 2016)). The Commissioner on remand, "should
employ whichever of these methods are appropriate to fully
develop the record as to [Green's] RFC." Id. 2017 WL
1313837, at *4.

---

[3] Plaintiff also states that a March 13, 2013, treatment record
from DENT, was reviewed by Dr. Medved and is missing from the
record. [Doc. #15-1 at 26]. There is a DENT record dated March
5, 2013 and electronically signed by Dr. Lixin Zhang in the
record. [Tr. 276, 456-59]. On remand, the Commissioner should
obtain any additional treatment records from DENT.

As noted earlier, the Court's role in reviewing a disability determination is not to make its own assessment of the plaintiff's functional capabilities; it is to review the ALJ's decision for reversible error. Because the Court has found the ALJ erred in failing to evaluate the opinion of treating orthopedic surgeon Dr. Huckell, it need not reach the merits of plaintiff's remaining arguments. Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this ruling. On remand the Commissioner will address the other claims of error not discussed herein.

The Court offers no opinion on whether the ALJ should or will find plaintiff disabled on remand. Rather the Court finds remand is appropriate to permit the ALJ to evaluate Dr. Huckell's opinion and develop the record accordingly.

## VI.   CONCLUSION

For the reasons stated, plaintiff's Motion for Judgment on the Pleadings **[Doc. #15]** is **GRANTED.** Defendant's Motion for Judgment on the Pleadings **[Doc. #22]** is **DENIED.**

In light of the Court's findings above, it need not reach the merits of plaintiff's other arguments. Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this opinion. On remand, the Commissioner shall address the other claims of error

not discussed herein.

This is not a Recommended Ruling.  The parties consented to proceed before a United States Magistrate Judge [doc. #11] on September 25, 2018, with appeal to the Court of Appeals. Fed. R. Civ. P. 73(b)-(c).

SO, ORDERED at Bridgeport, Connecticut this 19th day of March 2019.

_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE